THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF
FLORIDA TAMPA DIVISION

| | | |
|---|---|---|
| THERESE SHABE, | § | |
| Individually and on behalf of all | § | |
| others similarly situated; | § | CIVIL ACTION NO. |
| | § | |
| Plaintiff | § | |
| s, | § | |
| | § | |
| vs. | § | |
| | § | CLASS ACTION |
| MARRIOTT INTERNATIONAL, | § | |
| INC.; RENAISSANCE HOTEL | § | |
| MGMT CO. LLC; RITZ CARLTON | § | |
| HOTEL CO, LLC; RESIDENCE INN | | |
| BY MARRIOTT LLC; COURTYARD | | |
| MGMT CORP; SPRINGHILL SMC, | | |
| LLC; MARRIOTT | | |
| INTERNATIONAL HOTELS INC.; | | |
| MARRIOTT HOTEL SERVICES, | | |
| INC.; FAIRFIELD FMC LLC; | | |
| TOWNEPLACE MGMT LLC AND | | |
| MI HOTELS OF LAS VEGAS, INC. | | |
| | | |
| Defendants. | | |

PLAINTIFFS'  COLLECTIVE ACTION
COMPLAINT PURSUANT TO 216B FLSA
AND CLASS ACTION COMPLAINT

Plaintiff Therese Shabe, (the "Plaintiff" or "Representative Plaintiff") individually and on behalf of other  similarly situated employees (the "Putative Class"), brings this lawsuit against Defendant MARRIOTT INTERNATIONAL INC., and the above named subsidiary corporations collectively referred to herein as "Marriott" or "Defendants".

# I.   OVERVIEW

1.     Plaintiff and the proposed Putative Class Members are current and former Front Desk Agents and Front Desk Agent Supervisors of the Defendants (collectively "Front Desk Agents").

2.     Front Desk Agents earn an hourly wage in addition to commissions and bonuses.

3.     Front Desk Agents routinely work in excess of 40 hours per week.

4.     Although Marriott paid some overtime compensation to the Front Desk Agents, Marriott carelessly, recklessly and willfully miscalculated the full amount of overtime compensation due as required by law.

5.     Marriott refused to include the commissions and bonuses in the calculation of the Front Desk Agents' overtime rates.  By failing to include *all* income earned in the calculation of their 'regular rate', Marriott paid Front Desk Agents artificially low overtime rates - withholding millions of dollars in overtime wages.

6.     Further, by underpaying the overtime due, Marriott breached its obligations to Front Desk Agents under Marriott's 401K Plan by underfunding the individual plans and underfunding the corporate match funding.[1]

7.     Marriott's practice of failing to properly calculate and pay the legally required overtime rate occurred at Marriott's corporate payroll headquarters in

---

[1] *See DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 537 (E.D.N.Y. 2011) holding that an action to recover unpaid contributions to an ERISA plan is an action to recover "wages".

Louisville, Tennessee.  (*See* Exhibit 1 - Paystub, and Exhibit 2 - Marpay Pay Statement)) Accordingly, Marriott's unlawful payroll policy affected all 4051 hotel locations across the nation, including the 339 locations in the State of Florida.

8.     Because this unlawful practice affects tens of thousands of employees across the nation, and because the average employee's overtime reduction or underpayment each week may be less than $10.00, it is impracticable and economically unfeasible for each Front Desk Agent to maintain individual lawsuits.

9.     Accordingly, Plaintiff brings this action on behalf of herself and all other similarly situated employees to recover unpaid overtime compensation under the Fair Labor Standards Act 29 U.S.C.  §216(b) *et. seq.* (the "FLSA").

10.     The FLSA §218(a) mandates that when state or local law provide greater labor protections, the state or local law governs. Accordingly Plaintiff also brings this class action for unpaid overtime wages pursuant to Fed. R. Civ. P. Rule 23 *et seq.* and state law claims on behalf of Front Desk Agents who work or worked in the following states:  California, Colorado, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, South Carolina and Washington.

11.     Plaintiff brings this class action for unpaid wages in the form of underpaid/underfunded 401k benefits pursuant to common law claims for breach of contract pursuant to Fla. Stat. §448.08 and Fed. R. Civ. P. Rule 23 *et. seq.*

## II.   <u>JURISDICTION</u>

12.     This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

13.     The Court also has federal jurisdiction over the state law claims pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. §1332(d).

14.     The Court also has supplemental jurisdiction over the various state law subclasses pursuant to 28 U.S.C. §1367.

15.     The Court has simultaneous jurisdiction over the Collective Action Allegations and the Class Action Allegations *See Calderone, et. al. v. Scott,* No. 2:14-cv-00519-JES-CM (11th Cir. Sept. 28, 2016)   holding that "A § 216(b) collective action and a state-law Rule 23(b)(3) class action may be maintained in the same proceeding."

### III.    VENUE

16.     Venue is proper in this Division under 28 U.S.C. § 1391(a).

### IV.    PARTIES

17.     **Plaintiff** is a resident in the Middle District of Florida.

18.     Plaintiff was employed by Defendants as a Front Desk Agent Supervisor during the relevant statutory time period working at a Renaissance hotel in Tampa Florida from 2001 until her last day of employment in August, 2017.

19.     Plaintiff routinely worked overtime hours and regularly earned commissions and bonuses during the weeks she worked overtime.

20.      Marriott failed to pay Plaintiff the full amount of the legally required overtime compensation for her overtime hours. Marriott failed and refused to include the Plaintiff's bonuses and commissions in the calculation of her overtime rate as required by law.

21.   Plaintiff participated in Marriott's 401K retirement plan.   Marriott contributed a matching contribution to Plaintiff's 401k account (up to 6%).

22.   As a result of Marriott's failure to properly calculate overtime hours, Plaintiff has suffered damages in the amount of unpaid/underpaid overtime compensation; as well a the amount of Marriott's matching contribution to her 401k plan.

23.    **Renaissance Mgmt Hotel Company LLC.** is a wholly owned of Marriott International Inc. Renaissance employed Plaintiff as a Front Desk Agent at the Renaissance Hotel located at 4200 Jim Walter Blvd, Tampa, FL 33607. Although Plaintiff worked at Renaissance, she was paid by Marriott International Inc. Marriott controlled and  implemented all of Renaissance's pay policies, compensation plans and payroll distribution. (*See* Exhibit 1 - Pay Stub, and Exhibit 2 - Marpay Pay Statement)

**24.   Marriott International, Inc.** is a multinational  hospitality company that manages a broad portfolio of hotels around the globe.  Marriott is a Delaware corporation headquartered in Bethesda Maryland.

25.   Marriott employs approximately 226,500 employees and handles payroll for all of its operated and franchised hotels, including the Renaissance Hotel where Plaintiff worked.

26.   Marriott implemented all compensation policies and payroll services the Renaissance Hotel in which Plaintiff worked.

27.   Marriott failed to properly calculate and compensate Plaintiff for overtime hours causing the violations of law and damages incurred by Plaintiff. Marriott

failed and refused to include the Plaintiff's bonuses and commissions in the calculation of her overtime rate as required by law.

28.     During the relevant time period, Defendants acting through its affiliates and subsidiaries, created, ratified and implemented Defendants' unlawful payment scheme. Thus, Defendants  have acted directly or indirectly as an employer with respect to the named Plaintiffs and those similarly situated with the meaning of the FLSA.

**29.     Putative Class.** Plaintiff and the proposed Putative Class Members were ALL subjected to the identical violations of law under Marriott's common, unlawful pay practice. The class of similarly situated employees or potential class members sought to be certified under 29 U.S.C. §216(b) is defined as:

**"All persons who were employed by one of the Defendants as a Front Desk Agent at any time from September, 22 2014 through the present anywhere in the U.S. and its territories"**

Marriott operates 4051 establishments in 51 states across the country.  Plaintiff estimates that the size the putative class to be in excess of 10,000.   The precise size and the identity of the Class is readily ascertainable from Marriott's business records, tax records, and personnel records.

30.     Based upon the Plaintiff's estimated damages of $1,580.43, the potential damages to the Putative Class is well in excess of $5 Million Dollars.

31.     Plaintiff is geographically diverse from Marriott.

32.     Given the large number of putative class members, the relatively small weekly damages per member, and the identical nature of the claim, class and collective action is appropriate in this matter.

33.     Plaintiff also seeks class certification under Fed. R. Civ. P. 23 pursuant to the Class Action Fairness Act § 28 U.S.C. Section 1332(d) over the following state law claims and subclasses:

    a. **CALIFORNIA.** All persons who were employed by MARRIOTT as a Front Desk Agent at any time from September 22, 2013 through the present in the State of California (the "California Class");

    b. **COLORADO.** All persons who were employed by MARRIOTT as a Front Desk Agent at any time from September 22, 2014 through the present in the State of Colorado (the "Colorado Class")

    c. **NEW JERSEY**. All persons who were employed by MARRIOTT as a Front Desk Agent at any time from September 22, 2014 through the present in the State of New Jersey  (the "New Jersey Class");

    d. **NEW YORK**. All persons who were employed by MARRIOTT as a Front Desk Agent at any time from September 22, 2012 through the present in the State of New York  (the "New York Class");

    e. **NORTH CAROLINA**. All persons who were employed by MARRIOTT as a Front Desk Agent at any time from September 22, 2014 through the present in the State of North Carolina  (the "North Carolina Class");

    f. **OHIO**. All persons who were employed by MARRIOTT as a Front Desk Agent at any time from September 22, 2014 through the present in the State of Ohio  (the "Ohio Class");

    g. **OREGON**. All persons who were employed by MARRIOTT as a Front Desk Agent at any time from September 22, 2014 through the present

in the State of  Oregon (the "Oregon Class");

h. **PENNSYLVANIA**. All persons who were employed by MARRIOTT as a Front Desk Agent at any time from September 22, 2014 through the present in the State of Pennsylvania  (the "Pennsylvania Class");

i. **SOUTH CAROLINA**. All persons who were employed by MARRIOTT as a Front Desk Agent at any time from September 22, 2014 through the present in the State of South Carolina  (the "South Carolina Class");

j. **WASHINGTON**. All persons who were employed by MARRIOTT as a Front Desk Agent at any time from September 22, 2014 through the present in the State of Washington  (the "Washington Class");

## V.   FACTUAL ALLEGATIONS

34.    During the periods relevant to this action, Plaintiff and all those similarly situated were employed by Defendants as hourly, non-exempt ***Front Desk Agents*** who also earned non-discretionary commissions and bonuses.  Front Desk Agents were regularly required to work in excess of 40 hours per week. Instead of paying overtime for all of the hours worked in excess of 40 at rates of one and one half times the employees' regular rates of pay based upon all compensation earned, Marriott improperly underpaid Plaintiffs and all other similarly situated employees by failing to include **the bonuses and/or commissions commonly paid to Front Desk Agents** in the calculation of their regular rates. Accordingly, Marriott underpaid the Front Desk Agents' overtime compensation in violation of the FLSA, in violation of the applicable state laws,

and in breach of the terms of Marriott's 401k agreement.

35.    The Front Desk Agents received, non-discretionary bonuses from plans authorized and created by Mariott.   They received these bonuses and commissions from upselling guests, filling up rooms and sell-outs.  The paystubs reflect the additional payments under the terms of:  'RETRO' and 'AWARDS'.

36.    Pursuant to the FLSA §207(e) and 29 U.S.C. §778.118[2], the value of these non-discretionary bonuses and commissions are required to be included in the calculation of Plaintiff's "regular rate" for the purposes of calculating Plaintiff's overtime rate.

37.    Examining Plaintiff's MARPAY payroll stubs (Marriott payroll records for Plaintiff), demonstrate an underpayment of overtime wages for any workweek in which Plaintiff also earned bonuses.   **See Exhibit 3 -** Composite Sample of Improper Overtime Calculations.

38.     The Marpay records result in a weekly underpayment of overtime wages ranging from $0.13 to $66.45 per week.

39.    On average the Marpay records show a overtime shortfall of $6.33 per week, or $316.50 per year - per employee.

40.    Even conservatively estimating the number of Front Desk Agents at 10,000, Marriott is skimming in excess of $3 Million Dollars per year from their employees.

---

[2] § 778.118 Commission paid on a workweek basis. "When the commission is paid on a weekly basis, it is added to the employee's other earnings for that workweek (except overtime premiums and other payments excluded as provided in section 7(e) of the Act), and the total is divided by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek. The employee must then be paid extra compensation at one-half of that rate for each hour worked in excess of the applicable maximum hours standard."

41.    When viewed in aggregate - it is clear that Marriott engaged in a targeted policy and practice to underpay overtime wages to Front Desk Agents.

42.    This underpayment is not a mistake or a glitch.   The willfulness of Marriott's action is poignantly highlighted by the fact that there is not a single instance of an accidental 'overpayment'.

43.    The damages to the Front Desk Agents does not end with the weekly underpayment of overtime.   In addition to the $3+ million per year in overtime that Marriott refuses to pay the Front Desk Agents, it also recognizes savings by the corollary reduction in matching funds it must pay into the Front Desk Agents' 401k plans.

44.    The individual losses on a weekly basis are not sizeable enough for an average employee to notice; but this is an ambitious plan to commit wage-theft by a 'million little paper cuts' committed against tens of thousands of Front Desk Agents - saving millions.

## VI.    COLLECTIVE/CLASS ALLEGATIONS

45.    The claims under the FLSA may be pursued by those who file "opt-in" consents to this case pursuant to 29 U.S.C. § 216(b).

46.    The claims under the state law subclasses may be pursued by all similarly situated persons who choose not to opt-out of the state law subclasses pursuant to Fed. R. Civ.  P. 23.

47.    The number of individuals in each of each class is so numerous that joinder of all members is impracticable. Upon information and belief, Marriott engaged in improper overtime compensation policies at all 4051 hotel locations

in the United States, and thereby adversely impacting upwards of tens of thousands of front desk agents.

48.     Plaintiff will fairly and adequately protect the interests of the classes and have retained counsel that is experienced and competent in class action and employment litigation.

49.      Plaintiff has no interests that are contrary to, or in conflict with, the members of the classes.

50.     A collective/class action suit, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit. The damages suffered by individual members of the classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the classes to individually seek redress for the wrongs done to them.

51.     During any given week, Marriott's unlawful overtime compensation policies adversely impacted individual front desk agents anywhere from $0.13 when no overtime was worked or no bonuses/commissions earned up to $66.45 or more.  Upon information and belief, front desk agents were adversely affected by an average of $6.33 per week during weeks that they worked overtime and earned bonuses/commissions.

52.     By unlawfully skimming a few bucks per week from each of the thousands of front desk agent, Marriott was able to save multiple millions of dollars per year in underpaid overtime compensation.

53.     Accordingly, collective and class action is far superior to other available methods for the fair and efficient adjudication of the controversy. Absent these

actions, many members of the classes likely will not obtain redress of their damages and Defendants will unjustly retain the proceeds from their violations of the FLSA and the applicable state labor laws.

54.    Furthermore, even if any member of the classes could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system. Concentrating the litigation  in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

55.    There is a well-defined community of interest in the questions of law and fact affecting the classes as a whole. The questions of law and fact common to each of the classes and subclasses which predominate over any questions affecting solely the individual members. Among the common questions  of law and fact are:

      a.    Whether Marriott failed to correctly calculate and pay the proper overtime rate for Front Desk Agents;

      b.    Whether Marriott willfully and recklessly underpaid overtime compensation to Plaintiff and the Putative Class;

      c.    Whether Marriott acted willfully when they underpaid overtime compensation to Plaintiff and the Putative Class; AND

      d.    Whether Plaintiff and the Putative Class suffered damages, and if so the proper measure of damage.

56.    Plaintiff's claims here are not just typical of the claims of members of the

classes, but identical. Plaintiff and members of the classes have sustained damages arising out of Marriott's wrongful, common and unlawful pay policy of under-compensating Front Desk Agents for their overtime wages.

57.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its continued maintenance.

58.    Marriott created, supervised and authorized the unlawful pay practice complained of herein.

59.    The Plaintiff's paystubs reflect a centralized payroll department and payroll system and program under the title of MARRPAY inferring all putative class members working for any brand are paid by the same Marriott pay system. *See* Exhibit 2 - Marpay Pay Statement

60.    The facts demonstrate that this matter is ripe for Rule 23 class certification.

61.    The allegations that Marriott willfully underpaid overtime compensation to all Front Desk Agents at all 4051 hotel locations show that numerosity is satisfied.  Even assuming 3 Front Desk Agents per location reveals that there is upward of 12,000 affected employees.

62.    The common question of law is whether Marriott properly included the non-discretionary "AWARD" and "RETRO" bonuses in the calculation of the Front Desk Agents' overtime pay is a simple mathematical calculation - back of the napkin math with tens of thousands of napkins aided by database modeling.

63.    The claims of all Front Desk Agents are identical - the mathematics will reveal whether Marriott properly paid overtime compensation to the other Front Desk Agents, or they did not.

64.    The Plaintiff in this matter is perfectly capable to represent other Front

Desk Agents because she worked for Marriott for the last 16 years, she suffered underpaid overtime compensation during the applicable statutory periods, and her interests are aligned with all class members.

## VII.    FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. §216(b)

65.    Plaintiff realleges and reincorporates all allegations contained in Paragraphs 1 – 64  as if incorporated herein.

66.    At all relevant times, Defendants have been, and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).  Defendants also have revenues exceeding $500,000 annually.

67.    At all relevant times, Defendants employed Plaintiff, and continues to employ Front Desk Agents and Front Desk Agent Supervisors at 4051 hotel locations across the country.

68.    As stated above, Defendants have a policy and practice of underpaying overtime compensation to ALL of its Front Desk Agents for hours worked in excess of 40 per week by failing to include the value of bonuses and commissions earned in the overtime rates used to pay Plaintiff and  Putative Class Members for overtime compensation.

69.    Defendants failed to properly include the non-discretionary bonuses earned by Plaintiff and the proposed putative classes in the regular rate and overtime rate calculations as mandated by Section 7e of the FLSA, (29 USC 207e) CFR Sections 208, 209.  "Section 7(e) of the Act requires inclusion in the "regular rate" of "all remuneration for employment paid to, or on behalf of, the

employee", and includes the bonus monies paid to Plaintiff and the FLSA classes. *See also* 29 C.F.R. §778.118.

70.    Examining the payroll records of Plaintiff, it is clear that Marriott failed to properly include non-discretionary bonuses and commissions listed under the headings "RETRO and AWARDS" into the calculation of their regular rate and overtime rates. *See* Exhibit 3 - Composite Sample of Improper Overtime Calculations.

71.    Defendants' failure to pay Plaintiff and members of the FLSA Class the proper overtime compensation at rates not less than one and one- half times the correct regular rate of pay for all work performed beyond the 40- hour workweek, is a violation of 29 U.S.C. § 207.

72.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  Due to the Defendants' FLSA violations, Plaintiffs, on behalf of themselves and all other similarly situated members of the FLSA Class are entitled to recover from Defendants, the balance of the underpaid overtime compensation, an equal amount as liquidated damages, reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

73.    Defendants do not have and cannot have any "good faith" affirmative defense for their underpayments of millions of dollars in overtime wages. Marriott's failure to properly calculate a fundamental basis for overtime compensation under the FLSA shows a reckless disregard for the FLSA overtime pay requirements.

## VIII.  SECOND CAUSE OF ACTION
## VIOLATION OF CALIFORNIA WAGE AND HOUR
## LAWS

74.    Plaintiff realleges and reincorporates all allegations contained in Paragraphs 1 – 64  as if incorporated herein.

75.    The foregoing conduct, as alleged, constitutes a violation of California's wage and hour laws, *See* Labor Code, § 510. California law requires employers, such as Defendants, to pay overtime compensation to  all non-exempt employees for all hours worked over forty per week, or over eight per day. The Front Desk Agents and Front Desk Agent Supervisors working for Marriott in the State of California are hourly, non-exempt employees entitled to be paid overtime compensation for all overtime hours worked.

76.    Throughout the California Class Period, and continuing through the present, the California Class members worked in excess of eight hours in a workday and/or forty hours in a workweek. Certain California Class members also worked in excess of twelve hours in a workday.

77.    During the California Class Period, Defendants underpaid California Class members by failing to properly include bonuses earned in the regular rate of pay, resulting in an underpayment and incorrect overtime rates for all class members.

78.    California wage laws follow the FLSA requiring the overtime rates used be at one and one half times the employees' regular rate of pay to include the value of the non-discretionary bonuses earned.

79.    As a direct and proximate result of Defendants' willful, reckless and

unlawful conduct, as set forth herein, the California Class members have sustained damages, including loss of wages for all overtime hours worked on behalf of Defendants in an amounts to be established at trial, prejudgment interest, and costs and attorney's' fees, pursuant to statute and other applicable law.

80.   All california class members are entitled to be paid the balance of the overtime wages owed, plus an equal sum in liquidated damages, attorney's fees and expenses of this litigation.

### IX.  THIRD CAUSE OF ACTION
### VIOLATION OF COLORADO WAGE AND HOUR LAWS

81.   Plaintiffs reallege and reincorporate all allegations contained in Paragraphs 1 – 64 as if incorporated herein.

82.   The foregoing conduct, as alleged, violates the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101, *et seq*.

83.   At all relevant times, Defendants have been, and continue to be, "employers" within the meaning of the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101, et seq., and Colorado Minimum Wage Order No. 22. At all relevant times, Defendants employed, and/or continues to employ, "employee[s]," including each of the members of the prospective Colorado Class, within the meaning of the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101, et seq., and Colorado Minimum Wage Order No. 22.

84.   Colorado Minimum Wage Act requires an employer, such as Defendants, to pay overtime compensation to all non-exempt employees at one and one half times the employees' regular rates of pay, as following the FLSA, to include all

remuneration and non-discretionary bonuses in the calculations.

85.     At all relevant times, Defendants had a policy and practice of failing and refusing to pay overtime wages to the Colorado Class members at the correct overtime rates of one and one half times their regular rates of pay, to include the value of all bonuses earned.

86.     As a result of Defendants' willful, reckless and unlawful pay practice of underpaying overtime wages at rates less than one and one-half times the regular rate of pay for work performed in excess of twelve hours daily and/or forty hours in a workweek, Defendants have violated, and continue to violate, the Colorado Minimum Wage Act, C.R.S. § 8-6-106, and Colorado Minimum Wage Order No. 22.

87.     The Colorado Class seeks recovery of attorneys' fees, costs, and expenses of this action   to be paid by Defendants, as provided by the Colorado Minimum Wage Act, C.R.S. § 8-6-118, and Colorado Minimum Wage Order No. 22, respectively.

88.     The Colorado Class seeks damages in the amount of the respective underpaid overtime wages earned and due at rates not less than one and one-half times the regular rate of pay including the bonuses earned, for work performed in excess of twelve daily hours and/or forty hours in a workweek as provided by the Colorado Minimum Wage Act, C.R.S. § 8-6-118, and Colorado Minimum Wage Order No. 22, respectively, an equal sum in liquidated damages, and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

## X.  FOURTH CAUSE OF ACTION
## VIOLATION OF NEW JERSEY WAGE AND HOUR LAW

89.    Plaintiffs reallege and reincorporate all allegations contained in Paragraphs 1 – 64 as if incorporated herein.

90.    Defendants have engaged in a widespread pattern, policy, and practice of violating the New Jersey State Wage and Hour Law ("NJSWHL"), N.J.S.A. § 34:11-56a et seq., as detailed herein.

91.    Defendants failed to pay the New Jersey Class members one and a half times their regular rate of pay to include bonuses earned, for each hour of working time in excess of forty in a workweek as required by the NJSWHL, N.J.S. § 34:11-56a4.

92.    Defendants are employers within the meaning of the term "employer" in the NJSWHL, including the definition of "employer" in the NJSWHL, N.J.S. § 34:11-56a1(h). Defendants are individuals, partnerships, associations, joint stock companies, trusts, corporations, and/or or successors of any of the same.

93.    Defendants employed the New Jersey Class members in New Jersey within the meaning of the term "employ" in the NJSWHL, N.J.S. § 34:11-56a1(f).

94.    The New Jersey Class members are "individuals" within the meaning of the term "individual" in the NJSWHL, N.J.S. § 34:11-56a1(h)

95.    The New Jersey Class members are or have been "employees" within the meaning of the term "employee" in the NJSWHL, N.J.S. § 34:11-56a1(h).

96.    Defendants failed to pay the New Jersey Class members, overtime wages at the correct, lawful rates of one and one half times their regular rates of pay to include all bonuses earned, resulting in an underpayment of overtime wages to all class members who worked any overtime hours during the relevant class period.

97.   Defendants' violations of the NJSWHL, as described in this Complaint, have been willful and performed with reckless disregard for the the NJSWHL.

98.   The overtime wage provisions of the NJSWHL apply to Defendants and protect the New Jersey Class members.

99.   Defendants failed to pay the New Jersey Class members overtime wages at the correct rates to which they are entitled under the NJSWHL.

100.   By their knowing or intentional failure to pay the New Jersey Class members overtime wages at the correct overtime rates for hours worked in excess of forty hours per week, Defendants willfully violated the NJSWHL.

101.   Due to Defendants' violations of the NJSWHL, the New Jersey Class members have suffered damages that they are entitled to recover from Defendants the balance of all overtime wages owed, an equal sum in liquidated damages, attorney's fees and expenses of this litigation.

## XI.  FIFTH CAUSE OF ACTION
## VIOLATION OF NEW YORK STATE WAGE AND HOUR LAWS

102.   Plaintiffs reallege and reincorporate all allegations contained in Paragraphs 1 – 64 as if incorporated herein.

103.   The foregoing conduct, as alleged, violates the New York Minimum Wage Act, Labor Law § 650 et seq., the New York Wage Payment Act, Labor Law § 190 et seq., and the supporting Department of Labor Regulations, 12 N.Y.C.R.R. Part 142 (together, the "New York Labor Law").

104.   At all relevant times, Defendants have been "employers" within the meaning of  New York Labor Law § 651. At all relevant times, Defendants employed, and continue to employ, employees, including each of the New York

Class members, within the meaning of the New York Labor Law.

105.   The New York Labor Law requires an employer, such as Defendants, to pay overtime compensation to all non-exempt employees at rates of one and one half times the employees' regular rates of pay and to include the value of all non-discretionary bonuses in the regular rate calculations.. The New York Class members are non-exempt employees entitled to be paid overtime compensation for all overtime hours worked.

106.   At all relevant times, Defendants had a policy and practice of failing and refusing to pay overtime wages to the New York Class members for their hours worked in excess of forty hours per week at the correct overtime rates.

107.   As a result of Defendants' failure to pay wages earned and due at the correct overtime rates, and its decision to withhold wages earned to the New York Class members at a rate not less than one and one-half times the regular rates of pay for work performed in excess of forty hours in a workweek, Defendants have willfully, recklessly and unlawfully violated the New York Labor Law.

108.   The New York Class members seek recovery of attorneys' fees and costs of this action to be paid by Defendants, as provided by New York Labor Law § 663(1).

109.   The New York Class members seek the amount of his underpayments based on Defendants' failure to pay one and one half time the regular rate of pay for work performed in excess of forty hours,  as  provided by New York  Labor Law § 663(1), and such other legal

and equitable relief from Defendants' unlawful and willful conduct as the Court

deems just and proper.

110.   The New York Class members seek recovery of attorneys' fees and costs of this action to be paid by Defendants, as provided by New York Labor Law § 663(1).

## XII.  SIXTH CAUSE OF ACTION
## VIOLATION OF NORTH CAROLINA STATE WAGE AND HOUR LAWS

111.   Plaintiffs reallege and reincorporate all allegations contained in Paragraphs 1 – 64 as if incorporated herein.

112.   The foregoing conduct, as alleged, violates North Carolina G.S. 95-25.1 *et seq*., and any relevant rules adopted by the North Carolina Administrative Code, Title 13, Chapter 12 (collectively, "North Carolina Wage Laws").

113.   At all relevant times, Defendants have been, and continue to be, "employers" within the meaning of the North Carolina Wage Laws. At all relevant times, Defendants employed "employee[s]," including each of the members of the North Carolina Class, within the meaning  of the North Carolina Wage Laws.

114.   The North Carolina Wage Laws require an employer, such as Defendants, to pay all compensation due to employees on their regular paydays. N.C.G.C. § 95-25.6.  The members of the North Carolina Class were entitled to overtime pay under all applicable laws.

115.   At all relevant times, Defendants had a policy and practice of failing and refusing to pay overtime pay to the North Carolina Class members for their hours worked in excess of forty hours per workweek at the correct overtime rates of one and one half times the employees' regular rates of pay to include the value of

all bonuses earned.

116.   Defendants violated North Carolina Wage Laws including, but not necessarily limited to, North Carolina G.S. 95-25.6, by failing to pay the North Carolina Class members overtime wages for all work performed in excess of forty hours in a workweek at the correct and lawful rates.

117.   The North Carolina Class seeks recovery of attorneys' fees, costs, and expenses of this action to be paid by Defendants.

118.   The North Carolina Class seeks damages in the amount of the respective underpaid wages earned and due at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek to include the bonuses earned in the calculations; actual damages; penalty or liquidated damages in the equal amount; and such other legal and equitable relief as the Court deems just and proper.

### XIII.   SEVENTH CAUSE OF ACTION
### VIOLATION OF OHIO WAGE AND HOUR LAW

119.   Plaintiffs reallege and reincorporate all allegations contained in Paragraphs 1 – 64 as if incorporated herein.

120.   The foregoing conduct, as alleged, violates Ohio Revised Code Section 4111.01 et seq, and any relevant rules adopted by the Ohio Director of Commerce (collectively, "Ohio Wage Laws").

121.   At all relevant times, Defendants have been, and continue to be, "employers" within the meaning of the Ohio Wage Laws. At all relevant times, Defendants employed "employee[s]," including each of the members of the Ohio Class, within the meaning of the Ohio Wage Laws.

122.   The Ohio Wage Laws require an employer, such as Defendants, to pay

overtime compensation to all non-exempt employees. The members of the Ohio Class are not exempt from overtime pay requirements under the Ohio Wage Laws.

123.   At all relevant times, Defendants had a policy and practice of failing and refusing to pay overtime pay to the Ohio Class members for their hours worked in excess of forty hours per workweek at the correct overtime rates.

124.   Defendants violated Ohio Wage Laws including, but not necessarily limited to, Ohio Revised Code Section 4111.03(A) by failing to pay the Ohio Class members overtime for work performed in excess of forty hours in a workweek at rates of one and one half times the employees' regular rates of pay by not properly including the bonuses earned in the calculation.

125.   The Ohio Class seeks recovery of attorneys' fees, costs, and expenses of this action to be paid by Defendants.

126.   The Ohio Class seeks damages in the amount of the respective underpaid overtime wages earned and due at the correct rate of not less than one and one-half times the regular rates of pay to include the bonuses earned; an equal sum in liquidated damages; penalty damages; and such other legal and equitable relief as the Court deems just and proper.

## XIV.   EIGHTH CAUSE OF ACTION
## VIOLATION OF OREGON WAGE AND HOUR LAWS

127.   Plaintiffs reallege and reincorporate all allegations contained in Paragraphs 1 – 64 as if incorporated herein.

128.   The foregoing conduct, as alleged, violates Oregon Revised Statutes Sections 652.011 et seq, and 653.010 et seq, and the rules of the Bureau of Labor and Industries promulgated thereunder, BOLI 839-020-0000 et seq. (collectively,

"Oregon Wage Laws").

129.   At all relevant times, Defendants have been, and continue to be, "employers" within the meaning of the Oregon Wage Laws. At all relevant times, Defendants employed "employee[s]," including each of the members of the Oregon Class, within the meaning of the Oregon Wage Laws.

130.   The Oregon Wage Laws require an employer, such as Defendants, to pay overtime compensation to all non-exempt employees. The members of the Oregon Class are not exempt from overtime pay requirements under the Oregon Wage Laws.

131.   At all relevant times, Defendants had a policy and practice of failing and refusing to pay overtime pay to the Oregon Class members for their hours worked in excess of forty hours per workweek at the correct lawful overtime rates of one and one half times their regular rates of pay to include the bonuses earned.

132.   Defendants violated Oregon Wage Laws including, but not necessarily limited to, ORS Sections 651.140, 652.610(3) & 653.261 by failing to pay wages earned and due, and by withholding wages earned and due, to the Oregon Class members for work performed in excess of forty hours in a workweek.

133.   The Oregon Class seeks recovery of attorneys' fees, costs, and expenses of this action to be paid by Defendants.

134.   The Oregon Class seeks damages in the amount of the respective unpaid wages earned and due at a rate not less than one and one-half times the correct regular rate of pay for work performed in excess of forty hours in a workweek; actual damages; penalty damages; and such other legal and equitable relief as the

Court deems just and proper.

## XV.   NINTH CAUSE OF ACTION
## VIOLATION OF PENNSYLVANIA WAGE AND HOUR LAWS

135.   Plaintiffs reallege and reincorporate all allegations contained in Paragraphs 1 – 64 as if incorporated herein.

136.   The foregoing conduct, as alleged, violates the Pennsylvania Minimum Wage Act of 1968, 43 Pa. Stat. § 333.103 et seq.

137.   At all relevant times, Defendants have been, and continues to be, "employers" within the meaning of the Pennsylvania Minimum Wage Act of 1968. 43 Pa. Stat. § 333.103(g). At all relevant times, Defendants have employed, and continues to employ, employees, including each of the Pennsylvania Class members, within the meaning of the Pennsylvania Minimum Wage  Act of 1968. 43 Pa. Stat. § 333.103(h).

138.   The Pennsylvania Minimum Wage Act of 1968 requires employers, such as Defendants, to pay overtime compensation to all non-exempt employees. 43 Pa. Stat. § 333.104(c). The Pennsylvania Class members are not exempt from overtime pay requirements under Pennsylvania law.  43 Pa. Stat. § 333.105.

139.   At all relevant times, Defendants had a policy and practice of failing and refusing to pay overtime pay to the Pennsylvania Class members for their hours worked in excess of forty (40) hours per week at the correct and accurate overtime rates of one and one half times the employees' regular rates of pay by failing to properly include the bonuses earned in each respective pay period.

140.   As a result of Defendants' failure to pay wages earned and due, and their decision to withhold wages earned and due, to the Pennsylvania Class members at a rate not less than one and one-half times the regular rate of pay for work

performed in excess of forty (40) hours in a workweek, Defendants violated the Pennsylvania Minimum Wage Act of 1968. 43 Pa. Stat. § 333.104(c).

141.   Because Defendants willfully and unlawfully miscalculated and underpaid the Pennsylvania Class members their overtime wages, Defendants failed to keep and furnish records of those employees' hours, as required under Pennsylvania law.  43 Pa. Stat. § 333.108.

142.   By failing to record and maintain wage and hour records for its non-exempt employees, including the Pennsylvania Class members, and by failing to furnish such records to each such employee with each wage payment, Defendants failed to make, furnish, and keep such records in violation of the Pennsylvania Minimum Wage Act of 1968.  43 Pa. Stat. § 333.108.

143.   Defendants' failure to keep and furnish the required records of hours worked for the Pennsylvania Class members was and is willful, knowing, and intentional. Allowing  Defendants' record-keeping violations to continue would be a gross injustice to the Pennsylvania Class members and all future employees of Defendants.

144.   The Pennsylvania Class members seek recovery of attorneys' fees and costs of this action to be paid by Defendants, as provided by the Pennsylvania Minimum Wage Act of 1968. 43 Pa. Stat. § 333.113.

145.   The Pennsylvania Class members seek damages in the amount of twice the respective underpaid wages earned and due at a rate not less than one and one-half times the regular rate of pay to included bonuses earned for work performed in excess of forty (40) hours in a work week as provided by the Pennsylvania Minimum Wage Act of 1968, and such other legal and equitable

relief from Defendant's unlawful and willful conduct as the Court deems just and proper. 43 Pa. Stat. § 333.113.

## XVI.   TENTH CAUSE OF ACTION
## VIOLATION OF SOUTH CAROLINA WAGE AND HOUR LAWS

146.   Plaintiffs reallege and reincorporate all allegations contained in Paragraphs 1 – 64 as if incorporated herein.

147.   The foregoing conduct, as alleged, violates South Carolina Code of Laws Section 41-10- 10 et seq. (collectively, "South Carolina Wage Laws").

148.   At all relevant times, Defendants have been, and continue to be, "employers" within the meaning of the South Carolina Wage Laws. At all relevant times, Defendants employed "employee[s]," including each of the members of the South Carolina Class, within the meaning  of the South Carolina Wage Laws.

149.   The South Carolina Wage Laws require an employer, such as Defendants, to notify employees of wages earned and due. The members of the South Carolina Class were not notified of all wages earned and due as a result of Defendants' failure to pay overtime compensation.

150.   At all relevant times, Defendants had a policy and practice of failing and refusing to pay overtime pay to the South Carolina Class members for their hours worked in excess of forty hours per workweek at the correct overtime rates.

151.   As a result of Defendants' failure to record, report, credit, and furnish to each member of the South Carolina Class their respective wage and hour records showing all wages earned and due for all work performed, Defendants failed to make, keep, preserve, and furnish such records in violation of South Carolina Code of Laws Section 41-10-30.

152.   The South Carolina Class seeks recovery of attorneys' fees, costs, and expenses of this action to be paid by Defendants.

153.   The South Carolina Class seeks damages in the amount of the respective unpaid overtime wages earned and due at a rate not less than one and one-half times the regular rate of pay including the bonuses earned in the respective workweeks; actual damages; penalty or liquidated damages of an equal sum; and such other legal and equitable relief as the Court deems just and proper.

## XVII.   ELEVENTH CAUSE OF ACTION
### VIOLATION OF WASHINGTON WAGE AND HOUR LAWS

154.   Plaintiffs reallege and reincorporate all allegations contained in Paragraphs 1 – 64 as if incorporated herein.

155.   The foregoing conduct, as alleged, violate the Revised Code of Washington, Chapter 49.46 et seq, and any relevant regulations and/or rules adopted by the Washington Director of Labor and Industries  (collectively, "Washington Wage Laws").

156.   At all relevant times, Defendants have been, and continue to be, "employers" within the meaning of the Washington Wage Laws. At all relevant times, Defendants employed "employee[s]," including each of the members of the Washington Class, within the meaning of the Washington Wage Laws.

157.   The Washington Wage Laws require an employer, such as Defendants, to pay overtime compensation to all non-exempt employees. The members of the Washington Class are not exempt from overtime pay requirements under the Washington Wage Laws.

158.   At all relevant times, Defendants had a policy and practice of failing and

refusing to pay overtime pay to the Washington Class members for their hours worked in excess of forty hours per workweek at the correct lawful rates of one and one half times their regular rates of pay which requires the inclusion of bonuses earned in each respective week in the calculations.

159.   Defendants violated Washington Wage Laws including, but not necessarily limited to, Revised Code of Washington Chapter 49.46.130 by failing to pay the Washington Class members overtime wages at the correct and lawful rates for all for work performed in excess of forty hours in a workweek.

160.   As a result of Defendants' failure to record, report, credit, and furnish to each member of the Washington Class their respective wage and hour records showing all wages earned and due for all work performed, Defendants failed to make, keep, preserve, and furnish such records in violation of Revised Code of Washington Chapter 49.46.070

161.   The Washington Class seeks recovery of attorneys' fees, costs, and expenses of this action to be paid by Defendants.

162.   The Washington Class seeks damages in the amount of the respective underpaid overtime wages earned and due at a rate not less than one and one-half times the regular rate of pay to include the bonuses earned, for each work hour performed in excess of forty hours in a workweek; actual damages; penalty or liquidated damages in an equal sum; and such other legal and equitable relief as the Court deems just and proper.

### XIII. TWELFTH CAUSE OF ACTION
### BREACH OF CONTRACT AND ATTORNEYS' FEES PURSUANT TO F.S. §448.08

163.   Plaintiffs reallege and reincorporate all allegations contained in

Paragraphs 1 – 64 as if incorporated herein.

164. Marriott employed Plaintiff and similarly situated Front Desk Agents across the country.

165. As part of their employment agreement with Front Desk Agents, Marriott offered Front Desk Agents to participate in a 401k plan.

166. Plaintiff entered into an agreement with Marriott to participate in Marriott's 401k plan.

167. As part of the 401k agreement, Marriott was required to commit a percentage of participating Front Desk Agents' weekly pay to each participating individual's retirement account, and contribute matching funds up to 6% of the employee's earned income into the retirement account.

168. Marriott materially breached the 401k agreement by failing to commit the proper payment into the participating Front Desk Agents' retirement account; and failing to contribute the appropriate matching funds.

169. When Marriott underpaid Plaintiff's overtime wages, they also underfunded the payment to Plaintiff's 401k account as a percentage of earned income and failed to contribute the requisite matching funds into Plaintiff's 401k account.

170. Plaintiff brings this common law claim for breach of contract on behalf of herself and all other Front Desk Agents who participated in Marriott's 401k plan.

171. Plaintiff and similarly situated Front Desk Agents all engaged in a contract

to participate in Marriott's 401k plan.

172.   Marriott breached the material terms of the 401k contract by failing to commit and match the proper amount of income earned to the 401k accounts.

173.   Plaintiff and similarly situated Front Desk Agents all suffered damages in the amount of diminished 401k accounts as a direct and proximate result of Marriott's scheme to underpay overtime wages.

174.   Plaintiff and Front Desk Agents who entered into the 401k contract (the "401k Class") seeks damages in the amount of the respective underpaid and underfunded 401k accounts in the amounts due to the improper calculation of income earned pursuant to 401k plan's contribution percentages and matching funds that were not paid.

**RELIEF SOUGHT**

175.   WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

   a) An Order designating the FLSA Class as a collective action and issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

   b) For an Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiffs and the FLSA Class members and for liquidated damages equal in amount to

their unpaid compensation;

a) For an Order designating the state law sub-classes as Class actions pursuant to Fed. R. Civ. P. Rule 23;

b) For an Order designating the 401k Class as a class action pursuant to Fed. R. Civ. P. Rule 23;

c) For an Order appointing Plaintiffs and their counsel as Class Counsel to represent the interests of the FLSA Class, the state law sub-classes' and 401k Class;

d)  For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

e) For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Mitchell L. Feldman*
Mitchell L. Feldman Esq.
**FELDMAN WILLIAMS PLLC**
6940 West Linebaugh Avenue
Tampa, FL 33625
Tele: (813) 639-9366
Fax: (813) 639-9376
**E-mail: mlf@feldmanlegal.us**
**Attorney for Plaintiff**

Benjamin Lee Williams, Esq.
**FELDMAN WILLIAMS PLLC**
P.O. Box 3237
Ponte Vedra Beach, FL 32004
(t) (904) 580-6060
(f) (904) 671-9483
bwilliams@williamslawjax.com

*Attorneys for Plaintiff and Classes*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by ECF electronic filing on all known parties on September 22, 2017.

*/s/ Mitchell L. Feldman*